## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CHRISTINA DAVIS, Individually
and on behalf of the Estate of YONOK
DAVIS, deceased,

       Plaintiff,

v.

DELTA AIR LINES, INC.; UNIFI
AVIATION SECURITY, LLC;
AIRCO AVIATION SERVICES,
LLC; and JOHN DOES 1-6,

       Defendants.

CASE NO. 1:25-cv-02090-TWT

---

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

---

Defendants hereby file this Reply to Plaintiff's Response to Defendants' Motion to Dismiss ("Plaintiff's Response"):

### I.    ARGUMENT AND CITATION OF AUTHORITY

Plaintiff's Response claims that the Montreal Convention does not apply to Plaintiff and Decedent's journey from South Korea to Florida because Decedent did not intend for her connecting flight in Atlanta to be part of her preceding international trip. (Response, pg. 6). Plaintiff also claims Defendants' position lacks

supporting case law. (Response, pgs. 3-4). As shown herein, Plaintiff's Response lacks merit, and Defendants' Motion to Dismiss should be granted.

**A.  The Court can consider Defendants' exhibits because they are central to Plaintiff's claims and are undisputed.**

Plaintiff claims the exhibits to Defendants' Motion are "inapplicable," yet offers no legal authority for this statement. (Plaintiff's Response, pg. 4). The Court may, however, consider Defendants' exhibits to its prior Motion and this Reply.

Generally, "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsely v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (restating the standard); *Brady v. Postmaster General*, 521 F. App'x 914, 915-16 (11th Cir. 2013) (restating the standard); *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) (restating the standard). The "centrality" requirement is met if the contents of the exhibit are alleged in the complaint, or if the exhibit showed relevant information giving rise to the plaintiff's claim. *Day*, 400 F.3d at 1276 (finding a contract between third parties was central to plaintiffs' claim and was incorporated by reference, without converting the motion to dismiss into a motion for summary judgment); *Swinford v. Santos*, 121 F.4th 179, 187 (11th Cir. 2024) (finding that body camera footage could be considered when ruling on a motion to dismiss because it showed the relevant conduct giving rise to

plaintiff's claim). Further, "'undisputed' in this context means that the authenticity of the document is not challenged." *Horsely*, 304 F.3d at 1134; *see also Day*, 400 F.3d at 1276.

The exhibits to Defendants' Motion and this Reply ("Defendants' Exhibits") are central to Plaintiff's claims. Attached to this Reply are (1) a second affidavit of Delta's employee with Delta's passenger name records ("PNRs")[1] for Plaintiff and Decedent (**Exhibit C**, *Second Affidavit of Melba Prevost-Collier,* and **Exhibits C1 and C2** thereto); (2) a declaration of Unifi's employee with Decedent's passenger detail reports (**Exhibit D**, *Declaration of Shannon Terry,* and **Exhibit D1** thereto); and (3) non-party Korean Air's response to Defendants' subpoena (**Exhibit E**). Defendants' Exhibits contain sworn statements and flight records concerning Decedent's travel which provide facts necessary to contextualize Plaintiff's claims and enable the Court to determine whether the Montreal Convention applies – facts that were otherwise omitted from Plaintiff's Complaint. (*See generally* Plaintiff's Complaint; *see also* Defendants' Motion, **Exhibits A** and **B**; Defendants' Reply, **Exhibits C, D,** and **E**).

Defendants' Exhibits are "central" to Plaintiff's claim because they supply the necessary information omitted from Plaintiff's Complaint concerning the applicable

---

[1] These records were produced to Plaintiff's counsel on May 12, 2025, prior to the filings of Plaintiff's Response on May 13, 2025, and Plaintiff's Motion to Remand on May 14, 2025.

contract of carriage concerning Decedent's travel on the date of incident. *Swinford*, 121 F.4th at 187 (allowing consideration of body camera footage because it depicted events central to plaintiff's complaint); *see also Cantrell v. Nationwide Mutual Ins. Co.*, No. 1:19-cv-05514-ELR-RDC, 2020 WL 10056806, at *4 (N.D. Ga. Aug. 12, 2020) ("the undersigned has considered each of the Plaintiffs' affidavits because they are central to their case, as they supply the necessary factual allegations to support the claims listed in the Complaint.").

Defendants' Exhibits are also undisputed. Plaintiff has not contended that the exhibits – or their content – "ha[ve] been altered in any way" or that their information "differs from what actually happened." *Swinford*, 121 F.4th at 188 (quoting *Baker v. City of Madison*, 67 F.4th 1268 (11th Cir. 2023)). Plaintiff has also failed to present any legal authority or argument justifying exclusion of Defendants' Exhibits or their contents, as they supply the omitted and necessary information which will allow the Court to rule on the pending jurisdictional and preemption issues. The authenticity of Defendants' Exhibits is therefore undisputed. *Id.* at 187-88 ("nothing in our precedent mandates that a plaintiff stipulate that a video is authentic for the district court to properly consider it. All that is required is that its authenticity is not challenged."). Because these exhibits are central to Plaintiff's claims, and

undisputed by Plaintiff, the Court is authorized to consider the exhibits without converting the Motion to Dismiss into a motion for summary judgment.[2]

**B.    The Montreal Convention does apply.**

It is undisputed the incident occurred as Decedent was boarding Delta flight DL1196 from Atlanta, Georgia, to Fort Myers, Florida (the "Delta Flight"). Plaintiff admits this flight was preceded by an international flight, yet disputes that the Montreal Convention applies, instead arguing that the Delta Flight was not intended to be a part of Decedent's prior international journey. (Plaintiff's Response, pg. 4-6). Plaintiff's claim is undermined by both the law and the objective evidence of the parties' intent. Both parties objectively intended for the Delta Flight to be a part of Decedent's trip home from South Korea to Florida, thereby triggering the Montreal Convention.

As Plaintiff acknowledges, the domestic leg of an international journey is within the scope of the Montreal Convention "if it is part of an international itinerary 'regarded by the parties, i.e., the passenger and the carriers, as a single operation.'" *Auster v. Ghana Airways, Ltd.*, 514 F.3d 44, 45 (D.C. Cir. 2008) (quoting the Montreal Convention). Courts must look to "objective evidence, not subjective

---

[2] Should the Court convert Defendants' Motion into one for summary judgment, Defendants request the Court allow them to conduct any necessary discovery concerning Decedent's travel relating to the Delta Flight, as judicial economy dictates that this jurisdictional dispute be resolved at the outset of the litigation.

evidence" when determining whether the parties considered the domestic flight as part of the single operation of international travel. *Id*. at 46. A key source of such objective information is the passenger ticketing information. *Coyle v. P.T. Garuda Indonesia*, 363 F.3d 979, 987 (9th Cir. 2004) ("Our case law–along with that of our sister circuits and a wide array of lower courts–thus directs us to focus on the objective manifestations of the parties' intent expressed by the tickets"). However, a court may also "call upon extrinsic evidence in order to make sense of the objective indicia presented by those tickets–for instance, in deciphering an industry code affixed to a particular flight coupon[.]" *Id*. at 988. Courts have considered the length of the layover, whether bags were checked through to the final destination, and the circumstances of booking the ticket as other objective evidence of the parties' intent. *Compare Gustafson v. American Airlines, Inc*., 658 F. Supp. 2d 276 (D. Mass. 2009) (finding the domestic leg of plaintiff's trip from Boston to Mexico was part of a single operation because plaintiff used her passport at the beginning of the domestic leg, her baggage was checked through to Mexico, the baggage tags showed both flight numbers, and her layover was only a few hours), *with Kinzinger-Lignon v. Delta Airlines, Inc*., No. 1:11-CV-2282-TWT, 2012 WL 1681863, at *1 (N.D. Ga. May 11, 2012) (finding that plaintiffs' two-month stay in Atlanta was not part of an international trip from France to California because the "layover" was longer than

the rest of the trip, the stay was understood to be a separate vacation, and plaintiffs could not produce any documentation for their flight from Atlanta to France).

The D.C. Circuit has addressed this issue in a case which provides helpful guidance. In *Robertson v. American Airlines, Inc.*, despite the plaintiff booking multiple tickets through various carriers and altering her flight plans multiple times, both the District of Columbia District Court and the D.C. Circuit Court held there was "no genuine dispute" that plaintiff intended one of her domestic flights to be a part of the single operation of her international travel from England to Virginia. 277 F. Supp. 2d 91, 99 (D.C.C. 2003), *aff'd*, 401 F.3d 499, 502 (D.C. Cir. 2005). Both courts examined the travel invoices and itineraries and found that, although plaintiff booked her trips separately, her itineraries showed the intermediate stops and choice of carriers were incidental to her plan to fly internationally, and her brief, three-hour layover was evidence of her intent for the connecting domestic flight to be part of her international trip. *Robertson*, 401 F.3d at 502-03. Additionally, the Circuit Court held that, if the airline knew about the plaintiff's itinerary, it would have regarded her domestic flights as part of a single operation with the preceding international flights. *Id.* at 503-04. The Circuit Court then held that since the travel agent's knowledge of plaintiff's travel plans was imputed to the carrier, the airline possessed the requisite knowledge. *Id.* at 504. Thus, the Circuit Court held the objective

evidence showed the parties regarded the plaintiff's travel as a "single operation" and the Convention applied. *Id.*

This Circuit has also applied the Warsaw Convention (the predecessor to the Montreal Convention) to a domestic leg of an international journey. *See Blake v. American Airlines, Inc.*, 245 F.3d 1213 (11th Cir. 2001) (applying the Warsaw Convention to plaintiff's subsequent connecting domestic flight from Miami to Hartford after Plaintiff arrived in Miami on an international flight from Jamaica).

Here, Plaintiff admits Decedent arrived in Atlanta on a prior international flight. (Plaintiff's Response pg. 6). The Court can consider this admission, and Defendants' Exhibits, in assessing the nature of Decedent's international travel. *Day*, 400 F.3d at 1276; *see also Swinford*, 121 F.4th at 187; *Cantrell,* 2020 WL 10056806, at *4. The Court can, and must, look to such objective evidence to determine if the parties intended the Delta Flight to be part of a unified international journey. *Coyle*, 363 F.3d at 987-88. As shown below, the parties clearly intended the Delta Flight to be part of Decedent's international trip home from South Korea to Florida.

The PNRs list Plaintiff and Decedent as travel companions on the date of incident. (**Exhibit C**, ¶ 3-8). Plaintiff's PNR shows that her and Decedent's itinerary was to leave the Incheon airport (ICN) in South Korea on a Korean Air flight and arrive in Atlanta at 9:10AM, then depart from Atlanta at 12:58PM on the connecting Delta Flight to Fort Myers, Florida. (**Exhibit C**, ¶ 3, 9-10). The passenger detail

report lists Decedent having the same flight from Incheon to Atlanta, followed by the same connecting flight to Fort Myers. (**Exhibit D**, ¶ 1-5). Both the passenger detail report and Plaintiff's PNR show Decedent's Korean Air booking number in addition to her Delta booking number. (**Exhibit C2, Exhibit D1**; **Exhibit E**, ¶ 1, 4). Because of this recorded information, Defendants were already aware of Decedent's international itinerary when they provided her with wheelchair services for her connecting flight. (**Exhibit D**, ¶ 5-7). *See also Haldimann v. Delta Airlines, Inc.*, 168 F.3d 1324, 1326 (D.C. Cir 1999) (finding Plaintiff's domestic leg was international transportation where the entire trip was booked at one time, the tickets shared the same record numbers, and the agents of each airline could pull up information about the other parts of the trip).

Additionally, the flight records show Decedent's and Plaintiff's baggage was booked to be checked through from the Korean Air flight to the final destination in Fort Myers. (**Exhibit C**, ¶ 11-12). Plaintiff's PNR contains Korean Air bag numbers, which would have been printed on tickets affixed to their baggage in South Korea. (**Exhibit C**, ¶ 11-12). Korean Air's baggage records also show Plaintiff and Decedent's bags being checked in at Incheon, with a final destination of the Southwest Florida International Airport in Fort Myers (RSW), while the destination for Decedent's checked wheelchair was listed as Atlanta, to be used while boarding her Delta Fight. (Exhibit E, ¶ 8). This recorded information shows the parties' intent

for their bags to be transferred by the carriers directly from their international flight to their connecting Delta Flight.

This objective evidence clearly shows the parties' intent for the connecting Delta Flight in Atlanta to be part of the single operation of an international trip from South Korea to Florida. Plaintiff and Decedent's PNRs and passenger detail reports offer documentation of their planned itinerary of a single day, international trip flying with Korean Air from South Korea to Atlanta, and, after a brief, four-hour layover, taking their connecting Delta Flight to their final destination of Fort Myers, Florida. This documentation also shows their matching, checked baggage information. All parties were aware of Plaintiff and Decedent's international travel plans prior to the incident during boarding. *Gustafson*, 658 F. Supp. 2d at 286 (finding that a few hours between flights indicated plaintiff regarded the domestic layover as stopping point and not final destination, and noting plaintiff's baggage being checked through to the final destination was a factor in determining the flight was part of international carriage); *see also Robertson,* 401 F.3d at 502 (finding that a three hour layover confirmed that plaintiff regarded her domestic flight as part of a unified, international journey).

The only "evidence" Plaintiff identifies in support of her argument that the Delta Flight was not intended to be part of this single international trip from South Korea is that Plaintiff booked the tickets at separate times. (Plaintiff's Response,

pgs. 5-7). Even if true, courts have found that such circumstances are not dispositive in finding whether the Montreal Convention applies. *E.g.*, *Robertson*, 401 F.3d at 503 (finding that it was "insignificant" that the tickets were purchased on separate days, were issued in different booklets, were received in separate mailings, and were with different airlines). Like in *Robertson*, such facts would be insignificant compared with the rest of the objective evidence showing the flight was clearly intended to be part of a single operation from South Korea to Florida. *Id*.

Further, Plaintiff's reliance on the two cases cited in her Response, *Santleben v. Continental Airlines, Inc*., 178 F. Supp. 2d 752 (S.D. Tex. 2001), and *Zhang v. Air China Ltd*., 866 F. Supp. 2d 1162 (N.D. Cal. 2012), is misplaced: Plaintiff cites *Santleben* as an example of a domestic and international flight being deemed separate operations because the tickets were purchased at separate times. (Plaintiff's Response, pg. 5). *Santleben* is not analogous to this case. 178 F. Supp. 2d at 755. *Santleben* involved the complicated flight plans of a woman returning to Italy after she had worked and flown within the United States for several months. 178 F. Supp. 2d at 753-56. The Southern District Court of Texas found that one of her domestic flights did not qualify as a single operation on her return to Italy because there was no objective evidence which had notified the airline of plaintiff's larger plans. *Id*. at 755. Notably, *Santleben* was specifically distinguished and found unpersuasive by the D.C. District Court and the D.C. Circuit Court. *Robertson,* 277 F. Supp. 2d at 98

n.10; *see also Robertson*, 401 F.3d at 499. Unlike in *Santleben*, Defendants here were explicitly on notice that the Delta Flight was the second leg of Plaintiff and Decedent's international journey from South Korea to Florida by the aforementioned information in the PNRs and passenger detail reports, including the full Korean Air flight and baggage ticketing information. (*See generally*, **Exhibits C** and **D**).

Plaintiff cites *Zhang v. Air China Ltd.*, but misstates the facts: In *Zhang*, the Court found decedent's flight within China was not part of his international journey from California as the overseas flight with United Airlines was purchased by the plaintiff in California and the subsequent flight with Air China within China was purchased in China using a Chinese issued credit card by plaintiff's sister's co-worker's husband. 866 F. Supp. 2d at 1168 (denying defendant's motion to dismiss under the Montreal Convention but holding defendant was free to re-raise its Montreal Convention arguments upon further development of the factual record). Here, the facts are not analogous to those in *Zhang*, as here the flight records expressly reference the preceding international flight, and Decedent's Korean Air booking number, and show Decedent's bags booked to be checked through from her Korean Air flight to her final destination in Florida. (**Exhibits C** and **D**).

The objective evidence shows that the parties intended the Delta Flight to be part of a single operation of Decedent's international travel from South Korea to Florida, and Decedent's alleged injury during boarding falls under the Montreal

Convention. Nothing should prevent or delay the Court's consideration of the uncontroverted evidence necessary to determine whether the Convention applies to Plaintiff's claims. Plaintiff has admitted that, if applicable, the Convention will preempt her state claims. (Plaintiff's Response, pg. 7). Defendants request that the Court hold that the Convention applies, that it preempts all state law claims, and that it gives this Court jurisdiction over this matter. Defendants further ask the Court to GRANT their Motion to Dismiss and dismiss Plaintiff's Complaint for its failure to state a claim.

## II.    **CONCLUSION**

The Montreal Convention applies because Decedent was allegedly injured as she boarded a flight that was part of her single operation of international travel. Plaintiff's claims against Defendants under Georgia law are federally preempted by the Convention. Because Plaintiff has failed to state any other claims upon which relief can be granted, Defendants request that the Court dismiss Plaintiff's Complaint.

Respectfully submitted this 27th day of May, 2025 and hereby certified by the undersigned as prepared in Times New Roman (14 point) font.

**HALL BOOTH SMITH, P.C.**

*/s/ Justin M. Kerenyi*
JUSTIN M. KERENYI
Georgia Bar No. 416623

*Counsel for Defendants Delta Air Lines, Inc., Unifi Aviation, LLC, and AirCo Aviation Services, LLC*

191 Peachtree Street, NE, Suite 2900
Atlanta, Georgia 30303
Phone: (404) 954-5000
Fax: (404) 954-5020
jkerenyi@hallboothsmith.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this date served a copy of the within and foregoing **DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS** upon counsel for all parties by filing said document with the CM/ECF system which will automatically send electronic notification to the following:

Benjamin F. Williams
**Bross, McAllister & Williams LLC**
5400 Laurel Springs Pkwy
Building 100, Suite 102
Suwanee, GA 30024
ben@bmwlawgroup.com

Andrew J. Conn
**CONN LAW, LLC**
Post Office Box 8031
Savannah, Georgia 31412
andy@connlawfirm.com

Respectfully submitted this this 27th day of May, 2025.

**HALL BOOTH SMITH, P.C.**

*/s/ Justin M. Kerenyi*
JUSTIN M. KERENYI
Georgia Bar No. 416623

*Counsel for Defendants Delta Air Lines, Inc., Unifi Aviation, LLC, and AirCo Aviation Services, LLC*

191 Peachtree Street, NE, Suite 2900
Atlanta, Georgia 30303
Phone: (404) 954-5000
Fax: (404) 954-5020
jkerenyi@hallboothsmith.com